UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

T-MOBILE CENTRAL, LLC,

                   Plaintiff,

v.

CITY OF FRASER,

                   Defendant.

_____/

CIVIL ACTION NO. 08-11878

DISTRICT JUDGE JOHN FEIKENS

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**:

      I recommend that Defendant's denial of Plaintiff's application for a zoning variance be reversed.

**II.**    **REPORT**:

      **A.**    **Procedural History**

      Plaintiff's Complaint was filed on May 2, 2008. Defendant filed its Answer on July 8, 2008. The court entered a Scheduling Order on July 21, 2008. That Order was amended on January 30, 2009.

      On March 18, 2009, the district judge entered an Order of Reference calling for a Report and Recommendation on the parties briefs on appeal. The matter was set for hearing before the magistrate judge on May 4, 2009. After the presentation of oral arguments, the matter was taken under advisement.

      **B.**    **Applicable Law and Standard of Review**

      47 U.S.C. §332(c)(7)(B)(iii) provides that "[a]ny decision by a state or local government or instrumentality thereof to deny a request to place, construct, or modify

personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." The substantial evidence inquiry is the traditional standard employed by the courts for review of agency action. Laurence Wolf Capital Mgmt. v. City of Ferndale, 61 Fed.Appx. 204, 213 (6th Cir. 2003). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support the conclusion. A court must review the entire record, including evidence opposed to the result of the decision. The agency must explain any credibility judgments it made, and whether it gave reasons for crediting one piece of evidence over another. The court must examine the evidence as a whole, taking into account whatever in the record fairly detracts from its weight. Telespectrum, Inc. v. Public Service Commission of Kentucky, 227 F.3d 414, 423 (6th Cir. 2000). To succeed, a plaintiff must show that none of the grounds for the defendant's decision is supporting by substantial evidence in the record. Sprint Spectrum, L.P. v. Charter Twp of Brandon, 563 F.Supp. 2nd 697, 707 (E.D. Mich. 2008).

47 U.S.C. §332(c)(7)(B)(II) provides that local regulation of the placement, construction and modification of personal wireless service facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." The parties here do not dispute that T-Mobile's service is a "personal wireless service." While an individual denial does not automatically constitute a forbidden prohibition violating the "effects" provision, the language of a decision, or the circumstances under which it is rendered might be shown "to reflect, or represent, an effective prohibition on personal wireless service." Town of Amhurst, New Hampshire v. Omnipoint Communications Enterprises, Inc., 173 F.3d 9, 14 (1st Cir. 1999). If a community's zoning criteria, or its administration of them, effectively preclude towers no matter what the carrier does, they may constitute an effective

ban despite the fact that substantial evidence may exist for the denial under local zoning requirements.  Id.

### C.   Factual History

Plaintiff T-Mobile Central, LLC (hereinafter "T-Mobile") is licensed by the Federal Communications Commission ("FCC") to provide personal wireless communication services.  Defendant City of Fraser (hereinafter "Fraser" or "City") is a home city with a population of 15,297 persons within an area of approximately four square miles.  On November 27, 2007, T-Mobile filed a permit application with the City for the construction of a wireless facility at 32950 Hayes Road, on the southeast side of its intersection with Fourteen Mile Road.  T-Mobile proposed to construct a 120 foot monopole with utility cabinets that would allow for up to three other service providers to co-locate.

The City maintains a zoning ordinance that classifies properties into various residential, commercial and industrial districts, and allocates allowable land uses, with varying application requirements and standards, to each district.  The proposed site for T-Mobile's cell tower was located in an area zoned Neighborhood Commercial ("CN") and "designated to meet the day-to-day convenience shopping and service needs of persons residing in adjacent residential areas." (Order §32-133).  The site was already developed with a car wash business.  The City has also enacted a "master plan 2010" as a policy instrument and a declaration of long range goals and objectives for the development of the community.

T-Mobile's application sought a use variance and a height variance above the district's standard 25 foot limit for development.  After two public hearings before its Zoning Board of Appeals ("ZBA" or "Board"), the City denied T-Mobile's application for a variance.

3

(ROA0318).  The case is before this court on a timely appeal under the provisions of 47 U.S.C. §332(c)(7)(B)(v).

The parties have filed a stipulated record of the proceedings before the Zoning Board of Appeals.  The transcription of the two hearings is of very poor quality, to the extent that much of what was said is beyond review.

### D.   Analysis

The Telecommunications Act of 1996 ("TCA") is "a deliberate compromise between two competing aims - to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over the siting of towers."  Telespectrum, Inc. v. Public Serv. Comm'n of Ky., 225 F.3d 414, 423 (6th Cir. 2000).

> Congress enacted the TCA to promote competition and higher quality in telecommunications services and to encourage the rapid deployment of new telecommunications technologies. Congress intended to promote a national cellular network and to secure lower prices and better service for consumers by opening all telecommunications markets to competition.  One way in which the TCA accomplishes these goals is by reducing impediments imposed by local governments upon the installation of wireless communications facilities, such as antenna towers.  The TCA does not, however, abolish all local authority.  It tries to balance its goals with the preservation of some local authority over land use.  Put simply, the TCA attempts to reconcile the interests of consumers and residents (many of whom are themselves cell phone users).

T-Mobile Central, LLC v. Unified Government of Wyandotte, 528 F.Supp. 2nd 1128, 1146-47 (D. Kan. 2007).

47 U.S.C. §332(c)(7)(A) provides as follows:

**(A) General Authority**.

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a state or local government

4

> or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wire service facilities.

Section 332(c)(7)(B) provides the limitations on the general authority reserved to state and local governments. Those governmental entities may not unreasonably discriminate among providers of functionally equivalent services (§332(c)(7)(B)(i)(I)). Their regulation of the placement, construction or modification of wireless service facilities may not prohibit, or have the effect of prohibiting, the provisions of personal wireless services (§332(c)(7)(B)(i)(II)). State and local governments must act on requests for authorization to construct or modify wireless service facilities within a reasonable period of time (§332(c)(7)(B)(ii)). Any decision by a state or local government to deny a request for construction or modification of personal wireless service facilities must be in writing and supported by substantial evidence contained in a written record (§332(c)(7)(B)(iii)). Finally, no state or local government or instrumentality thereof may regulate the placement, construction or modification of personal wireless service facilities on the basis of environmental effects of radio frequency emissions to the extent that such facilities comply with federal communications commission's regulations concerning such emissions (§332(c)(7)(B)(iv)).

The City issued a written statement of the reasons for its denial of T-Mobile's application. The statement asserts nine separate bases for the decision: 1) the zoning ordinance criteria have not been met for issuance of a variance; 2) lack of unnecessary hardship and self-created hardship; 3) lack of evidence of need for tower height; 4) service needs exist primarily in other communities; 5) the City already has more than its fair share of towers; 6) sites in the City of Warren and Sterling Heights appear to be adequate for cell

5

tower placement; 7) no evidence exists that the problem can't be solved by co-location; 8) propagation maps still show coverage lapses in Fraser after the proposed installation; and 9) errs (sic) on the applicant's submittals cast doubt on the submittals.  (ROA, Exhibit 14).

T-Mobile argues that the decision by the Fraser Board of Zoning Appeals contravened two of the statutory limitations.  First, it maintains that substantial evidence in the record does not support of the City's denial of its application.  Second, it argues that the City's denial has the effect of totally prohibiting T-Mobile from providing personal wireless services to its customers.

### 1.    Do the City's Land Use Regulations and Policies Apply?

T-Mobile maintains that the City's land use regulations and policies do not address wireless telecommunications facilities.  It relies upon the statement of City building official Randy Warunek at a February 7, 2008 meeting of the ZBA that "at this time, Fraser has no specific ordinance directed solely for cell towers."  Plaintiff further asserts that the "Master Plan 2010" adopted by the Defendant "is silent regarding the citing of wireless telecommunications facilities." (Plaintiff's Brief, Pages 3-4).  As Michigan law provides that the master plan is a policy document that functions as a development guide, T-Mobile concludes that the City has no plan which includes wireless telecommunications facilities. As further support for that position, T-Mobile observes that Fraser has been working on the drafting and adoption of a wireless communications ordinance.  Plaintiff characterizes the City's approval of six existing wireless communications facilities within its boundaries as "ad hoc," noting that three of the towers are situated in industrial districts, two in residential

districts on city owned property, and one in a commercial zoning district.  T-Mobile further notes that several of the parcels are developed with dual uses.  (Plaintiff's Brief, Page 4).

The City counters that its land use regulations and policies do address wireless telecommunications facilities.  It maintains that the Industrial Restricted ("IR") district is the proper zone classification for the citing of wireless facilities.  The zoning ordinance would appear to support that position.  Section 32-143 deals with Industrial Restricted districts.  Section 32-143(1)(j) lists "[c]ommercial radio, television and other transmitting or relay antenna towers" among the permitted uses.   In response to questions from Board Chairman Stimac, City Planner Randy Warunek confirmed that a cellular telephone tower constructed in an IR zoning district was determined to be a permitted use, although a height variance had to be obtained.  (ROA 0077-78).  The fact that efforts may be underway to draft an ordinance or regulation more specifically targeted to wireless telecommunications facilities does not compel the conclusion that such improvements are exempt from restrictions under the current zoning ordinance.  In response to T-Mobile's charge that its approach to currently existing telecommunications facilities was ad hoc, the City observes that the two towers constructed on City owned property are exempt from the City's land use regulations, including zoning ordinances.  Morrison v. City of East Lansing, 255 Mich.App. 505, 660 N.W. 2nd 395 (2003).  The City's brief does not address the remaining existing facilities.  I am satisfied that the City's zoning ordinance applies to the Plaintiff's proposed facility, and that this case must be decided on the merits of the City's justifications for denial of the variance under its zoning ordinance, and whether the decision is consistent with the policies established by Congress in the Telecommunications Act.

7

### 2.    Does the Proposed Wireless Communications Facility Constitute an Essential Service?

In further support of its position that the proposed wireless telecommunications tower was not subject to the City's zoning ordinance, T-Mobile argues that the facility constituted an "essential service" within the meaning of the ordinance.  "Essential services" is defined in Section 32-3 as follows:

> The erection, construction, alteration or maintenance by public, (sic) utilities or municipal departments of underground, surface or overhead gas, electrical, steam, fuel or water transmission or distribution systems; collection, communication, supply or disposal systems, including towers, poles, wires, main, drain, sewers, pipes, conduits, cables, fire alarm and police call boxes, traffic signals, hydrants and similar equipment in connection herewith (sic), but not including buildings which are necessary for the furnishing of adequate service by such utilities or municipal departments for the general health, safety or welfare.

Section 32-72 of the ordinance provides that "[e]ssential services shall be permitted as authorized and regulated by law and other ordinances of the city, it being the intention hereof to exempt such essential services which primarily serve the city from the application of this chapter."

Unfortunately, T-Mobile's argument on this appeal is reduced to a footnote at Page 13 of its Brief.  The footnote merely asserts that the proposed tower was exempt from the zoning ordinance because it was necessary for the "general health, safety or welfare." Even assuming, however, that the project falls within the definition of an essential service as described in Section 32-3 of the zoning ordinance, Section 32-72 of the ordinance expressly states the policy of the City "to exempt such essential services which primarily serve the City from the application of this chapter."  Qualification for an essential services

8

exemption, therefore, requires a showing that the service in question primarily served the City of Fraser.  T-Mobile has not offered such evidence.  In a discussion of the exhibits offered by T-Mobile to depict the area to be serviced by the proposed tower, counsel for Plaintiff conceded that Fraser would benefit from one-third of the coverage, with the remaining two-thirds divided between the Cities of Warren and Sterling Heights.  (ROA 235-38).  As Section 32-72 of the Fraser zoning ordinance expressly limits exemptions  to services which primarily serve Fraser, I am satisfied that substantial evidence supports the ZBA determination that the one-third of the benefit of the proposed tower flowing to Fraser did not qualify the project for "essential services" status.

Fraser further argues in its brief that a wireless telecommunications facility has never been defined as an "essential service" under Section 32-2 of the zoning ordinance.  The City observes, correctly, that the definition of the term does not specifically include "the words wireless facility and/or any variation thereof."  Fraser relies on Macenas v. Village of Michiana, 433 Mich. 380 (1989) for the proposition that, in cases of ambiguity in municipal zoning ordinances, a court should give deference to a consistent construction applied by the municipality.  I find the argument somewhat strained, as there is no evidence that the city ever evaluated a wireless facility under the essential services sections of the zoning ordinance.  Nonetheless, I am satisfied that the ordinance is intended to exempt only such "essential services" as primarily benefit the City of Fraser, and that the evidence and argument presented by T-Mobile before the ZBA did not meet that standard with respect to the facility in issue here.

### 3.   Does the Proposed Wireless Facility Meet the Zoning Ordinance Criteria for a Variance?

The Zoning Board of Appeals decision recites nine bases for the denial of a variance to T-Mobile.  The first of those is that the zoning ordinance criteria for a variance had not been met.  Those requirements are set out in Ordinance Section 32-228(a)(2), and include the following:

> a.  That there are exceptional or extraordinary circumstances or conditions applying to the property in question or as to the intended use of the property that do not apply generally to other properties in the same zoning district.
>
> b.  That such variance is necessary for the preservation and enjoyment of a substantial property right similar to that possessed by other properties in the same vicinity.   The possibility of increased financial returns shall not of itself be deemed sufficient to warrant a variance.
>
> c.   That the authorizing of such variance will not be of substantial detriment to adjacent property and will not materially impair the intent and purpose of this chapter or the public interest.
>
> d.  That the conditions or situation of the specific piece of property, or the intended use of the property for which the variance is sought, is not of so general or recurrent in (sic) nature as to create a general rule for such condition or situation.

Section 32-228(a)(2) provides that all of the above conditions must be established by the evidence, or no variance shall be authorized by the Board.

### a.   Zoning Ordinance §32-228(a)(2)a

T-Mobile argues that the "gap" in wireless service coverage constituted an exceptional or extraordinary circumstance or condition sufficient to meet the first criterion.  In response, the City maintains that T-Mobile has not established that a significant gap in

coverage existed in the area where the proposed tower was to be located.  I disagree.  T-Mobile submitted documentary and testimonial evidence that a gap existed in wireless telecommunications services to areas of Fraser, Warren and Sterling Heights surrounding the proposed tower site.  Plaintiff also filed evidence that it had tried, unsuccessfully, to fill the gap by erecting a facility in Sterling Heights.  The proposed Sterling Heights project was located on residentially zoned property, and a petition for a variance was denied.  The record reveals that all of the properties at the proposed site were either fully developed (ROA 60, 98, 147, 150 and 312-13), or had zoning designations and land use restrictions inconsistent with the project.  T-Mobile offered the affidavit and testimony of Srinvas Kovuru, a radio frequency engineer engaged in the development of Plaintiff's wireless network in the area in question.  Kovuru evaluated the proposed project and determined that the placement of a 120 foot tower at 32950 Hayes Road, in Fraser, was necessary to the establishment of seamless telecommunications coverage in the area.  (ROA 154).  T-Mobile observes that the City offered nothing in the record to rebut Kovuru's determination. The Board failed to act upon the written recommendation of its planning consultant, Patrick Meagher, that T-Mobile's application be referred to an independent radio engineer for review.  (ROA 0308).  The ZBA offered only the non-expert opinions of its members and anecdotal statements by area residents regarding cell phone reception.  Such evidence is insufficient to satisfy the requirements of the TCA.  MIOP, Inc. v. City of Grand Rapids, 175 F.Supp. 2nd 952 (W.D. Mich. 2001); Cinncinnati Bell Wireless LLC v. City of Middletown, Case No. 1:07-CV-022, Slip Op. at 7 (S.D. Ohio 2008).  See also, Verizon Wireless v. Douglas County, 544 F.Supp. 2nd 1218, 1247 (D. Kansas 2008) (determinations of technical issues cannot be sustained as based on substantial evidence when they are based on the

11

adjudicators own independent findings and opinions, rather than evidence and testimony in the record).

In its Reply Brief, T-Mobile further observes that the ZBA decision was not based on the failure to establish a gap in wireless communications services.  On the contrary, the written decision appears to concede that such a coverage gap existed.  (ROA 318-20).  In denying the variance, the Board found, among other things, that:1)  "service needs exist primarily in other communities [Sterling Heights and Warren]"; 2) "propagation maps still show coverage lapses in Fraser after the proposed installation"; and 3) "no evidence exists that the problem can't be solved by co-location".  (ROA 319-21 [reasons for denial No. 4, 7 and 8]).  T-Mobile further notes that the City ignored the advice of its own expert in failing to secure evidence to counter the Plaintiff's evidence that there was a service gap.  Having failed to secure its own evidence in opposition, and having accepted the reality of the coverage gap in its written decision, the City may not now assert that T-Mobile failed to demonstrate that a gap existed.  See Sprint Spectrum v. Town of Swansea, 574 F.Supp. 2nd 227, 236-7 (D. Mass. 2008) (Zoning Board may not provide applicant with one reason for denial and then seek to uphold its decision in court on other grounds); USOC of Greater Iowa, Inc. v. City of Bellevue, Nebraska, 279 F.Supp. 2nd 1080, 1087 (D. Neb. 2003) ("post hoc rationale cannot serve as substantial evidence").  The zoning map reveals that the land in the immediate vicinity of the proposed tower site is the only non-residential property near the gap in wireless communications service.  (ROA 0184).  It is undisputed that residential zoning districts are not appropriate for placement of cell towers.  I am satisfied that Plaintiff has demonstrated an exceptional circumstance or condition as to the property in question, and as to T-Mobile's intended use of it.  I find as well that the Defendant's denial statement

12

concedes the existence of a gap. Substantial evidence does not support the City's contrary decision on that issue.

**b.      Zoning Ordinance §32-238(a)(2)b**

The ZBA further found that T-Mobile had failed to demonstrate that a variance was necessary for the preservation and enjoyment of a substantial property right similar to that possessed by other properties in the same vicinity. Zoning ordinance specifically provides that the possibility of increased financial return is not, in itself, sufficient to warrant a variance. T-Mobile does not directly address this finding. The real estate was already developed with a commercial car wash business. There is no evidence that the property could not be utilized in the same manner as other parcels in the vicinity without the variance sought. The Michigan Court of Appeals has held that a use variance may not issue if the property can be used in a manner consistent with zoning restrictions. Janssen v. Holland Charter Twp., 252 Mich.App. 197, 201 (2002). I am satisfied that substantial evidence supports the Board's conclusion that a variance was not necessary for the preservation and enjoyment of a substantial property right similar to that possessed by other properties in the vicinity. Whether that decision can be reconciled with the policies underlying the TCA is a separate issue.

The ZBA made reference in the same section of its decision to what it perceived as a lack of evidence to support the tower height for which a variance was sought. It also concluded that the primary phone traffic volume and land areas served by the proposed tower would be in the Cities of Warren and Sterling Heights, rather than Fraser. Each of these additional considerations is addressed in subsequent sections of the decision, and will not be addressed here.

13

### c.     Zoning Ordinance §32-228(a)(2)c

The ZBA determined that authorizing the variance requested by T-Mobile would be a substantial detriment to adjacent properties and materially impair the intent and purpose of the zoning ordinance or the public interest.  The decision was based upon the Board's finding that "[t]he applicant has presented no evidence that property values will not be adversely affected."   The City also relied upon studies prepared at the University of Massachusetts and the University of Aukland, New Zeland which concluded that a cell tower placement adjacent to residential properties "needs to be considered as a negative amenity that may reduce residential property valuation."  (ROA 0318).  Neither of those studies, however, was provided to T-Mobile, and neither was made part of the record below.   Thus, they are not "substantial evidence" to support the Board's decision. Telespectrum, Inc. v. Public Serv. Comm'n of Ky., 225 F.3d 414, 423 (6th Cir. 2000).  T-Mobile's representative, Ellen Tencer, offered a presentation in support of the application for variance.  She pointed out that a wireless telecommunications facility is a passive land use that requires only electricity and telephone services to operate.  The proposed facility would generate no noise, pollution, vibrations, traffic or other harmful phenomena.  She pointed out that the public, including adjacent residential property owners, would benefit by the closure of the gap in communications capabilities.  There is no contrary evidence in the record.  T-Mobile cites case authority for the proposition that it may not be required to prove the negative (i.e. that property values would not decline), as it would constitute an "impossible standard." MIOP, Inc. v. City of Grand Rapids, 175 F.Supp. 2nd 952, 956 (W.D. Mich. 2001) (applicant not required to present evidence showing that its facility would not "interfere with or discourage the appropriate development" of adjacent properties or

14

unreasonably affect their value).  The City must have an evidentiary basis for its findings, and it may not simply disregard the applicant's presentation, without an evidentiary basis for doing so.  Cincinnati Bell Wireless LLC v. City of Middletown, Case No. 1:07-CV-022, Slip Op. at 7 (S.D. Ohio 2008).  Substantial evidence must be relevant, local and timely. See, e.g., MIOP, supra, 175 F.Supp. 2nd at 956.  "Speculative and inconclusive" evidence is also unacceptable.  See, e.g., Middletown, supra, at 7-9; Telespectrum, Inc. v. Public Serv. Comm'n of Ky., 225 F.3d 414, 424 (6th Cir. 2000).  I am satisfied that substantial evidence does not support the Board's finding that the proposed variance would result in a substantial detriment to adjacent property.  There is simply no basis in the record for that conclusion.

### d.    Zoning Ordinance §32-228(a)(2)d

The Board further found that "[t]he conditions or situations with regard to the proposed property and its intended use are general and recurrent in nature."  It concluded that T-Mobile's argument, if accepted, would require the conclusion that "any time a non-residential site is available within [T-Mobile's] search ring, it becomes a proposed appropriate location for a cell tower."  T-Mobile characterizes the Board's decision as a finding that "approval would be a bad precedent."  (Plaintiff's Brief, Page 14).  Plaintiff argues that no property in the City of Fraser is expressly zoned to allow wireless telecommunications facilities.  Even if the City's position that such facilities are allowed in IR districts is accepted, Plaintiff maintains that no IR parcels were located anywhere near the service gap established by the evidence.  It should further be noted that the City's 35 foot height limitation in IR districts would still have required T-Mobile to apply for a height variance.

15

As I understand Section 32-228(a)(2)(d) of the Fraser zoning ordinance, it is intended to prevent the issuance of a variance on grounds which would be generally applicable to all similarly zoned properties, and for purposes which virtually any property owner may wish to pursue. Application of a lesser standard would severely undermine the City's zoning scheme and land use policies. The exception would virtually swallow the rule. Applying that analysis, I conclude that substantial evidence does not support the Board's decision to deny a variance in this instance. The evidence presented by T-Mobile regarding the basic design and structure of wireless telecommunications networks, including the co-location and joint use of towers, adequately demonstrates that the variance sought by T-Mobile was not based on conditions or situations likely to be general and recurrent in nature. Competing telecommunications providers generally share existing tower facilities rather than bear the entire cost of constructing an exclusive use tower. T-Mobile's representative, Ellen Tencer, explained repeatedly that the proposed tower was designed to support service by multiple wireless service providers. The need to allow for access by competitor carriers dictated the 120 foot tower height and the surface area needed for the tower. (ROA 228, 232, 239-44, 254). Tencer also explained that T-Mobile looked for existing towers upon which it might co-locate its transmission equipment, but found none which would afford adequate coverage to the 14 Mile Road and Hayes area. (ROA 239-40).

### e.   Conclusion - ZBA Decision Consistent with Zoning Ordinance Standard

Section 32-228(a)(2) of the Fraser Zoning Ordinance requires that the ZBA deny a variance unless all of the factors in subsection a through d are found to exist. Because I

16

find that substantial evidence supports the Board's finding under §32-228(a)(2)b, I conclude that the decision to deny the application was supported by substantial evidence. The decision was consistent with the zoning ordinance and Michigan law. <u>Janssen v. Holland Charter Twp.</u>, 252 Mich.App. 197 (2002). The question remains whether Fraser's denial of T-Mobile's application for a variance contravenes the provisions of §332(c)(7)(B)(i)(11) of the TCA.

### 4.   ZBA's Reasons for Denial Nos. 2-9

Only the first reason stated by the Zoning Board of Appeals in support of its decision is linked specifically to the provisions of the Fraser Zoning Ordinance. Reasons 2-8 make no reference to the zoning ordinance whatever. Our circuit has held that concerns expressed as grounds for a denial of a variance are not based on substantial evidence if they do not relate to any of the criteria set out in the zoning ordinance. <u>New Par v. City of Saginaw</u>, 301 F.3d 390, 398 (6th Cir. 2002). In the absence of a correlation between the Board's stated reasons and some provision of the ordinance which it invokes as grounds for its action, a finding of substantial evidence is not warranted. I find this particularly true of the Board's stated reasons numbered 4 (service needs exist primarily in other communities), 5 (Fraser already has more than its fair share of towers) and 6 (sites in Warren and Sterling Heights appear to be adequate for tower placement).

The Board's reasons numbered 2 and 7 assert a lack of evidence that co-location of T-Mobile equipment on existing towers under the control of other providers could not occur, and/or that T-Mobile had approached other operators for assistance in alleviating its coverage gap. The propagation maps prepared and presented by Mr. Kovuru at the April 3, 2008 ZBA meeting do depict a tower owned by another entity, at the intersection

of 15 Mile Road and Hayes Road.  The potential use of that tower by T-Mobile was explored by the Board at the meeting, and Ms. Tencer explained that it was not suitably placed for use in relieving the coverage gap.  The ZBA has offered no evidence to the contrary.  Simply pointing out that possible alternative sites exist is not substantial evidence sufficient to deny a variance.  See USCOC of New Hampshire RSA No.2, Inc. v. City of Franklin, 413 F.Supp. 2nd 21 (D. N.H. 2006) (denial on grounds of alternative sites not supported by substantial evidence because there was no evidence that alleged alternatives would have met zoning requirements); Cincinnati Bell Wireless LLC v. City of Middletown, Case No. 1:07-CV022, Slip Op. at 7 (S.D. Ohio 2008) (speculative assertion of validity of other sites not substantial evidence).

The ZBA's reason number 3 (lack of evidence of need for tower height) is simply contrary to the record evidence.  The Affidavit of Mr. Kovuru asserts his expert opinion, based in part upon his computer analysis, that a tower of 120 feet was needed at the proposed location.  Ms. Tencer testified that the tower height was further required to allow for co-location of up to four carriers on the proposed facility.  Once again, the ZBA offered no contrary evidence.

Defendant's reason number 8 (propagation maps show coverage lapses after proposed installation) suffers from the same defect as reasons 4 through 6, as no provision of the Fraser Zoning Ordinance imposes a standard of perfection.  T-Mobile's goal in construction the proposed tower was to reduce the level of its dropped calls by 50%, to the 1% level deemed acceptable under its operations policy.  The testimony of Mr. Kovuru constitutes substantial evidence that the project for which the variance was sought would meet that standard.  The Board presented no contrary evidence.

The 9th and last reason asserted by the ZBA for denial of Plaintiff's variance request was "errs" (sic) on the applicant's submittals.   Specifically, the Board asserted that the propagation maps incorrectly depicted the existing facility at the 15 Mile Road and Hayes Road intersection.  Plaintiff's propagation maps do, in fact, depict the tower on the Sterling Heights (west) side of Hayes Road.  The parties agree that the actual location is on the Fraser (east) side of the road.  In my view, however, the mapping error could not constitute substantial evidence warranting denial of the application.  Mr. Kovuru's testimony was that his computer analysis was based upon the latitude/longitude of the facility as verified by GPS at the physical location.  Further, Ms. Tencer testified that utilization of the tower in question would not contribute meaningfully to the reduction of the service gap.  I agree with T-Mobile that error is de minimus.  The ZBA offers no evidence that the error undermined the scientific validity of Plaintiff's presentation.

**5.    Does the City's Application of its Zoning Ordinance Have the Effect of Prohibiting the Provision of Personal Wireless Services?**

47 U.S.C. §332(c)(B)(i)(II) provides that local regulation of the placement and construction of personal wireless service facilities by any state or local government or instrumentality thereof "shall not prohibit or have the effect of prohibiting the provision of personal wireless services."  T-Mobile maintains that denial of its variance application by the ZBA amounts, under the circumstances of this case, to an effective prohibition.  To succeed of such an argument, a plaintiff need not demonstrate a blanket ban.  Rather, it must show that: (1) it has been denied the ability to close a significant gap in the availability of wireless services; and (2) that further reasonable efforts are so likely to be fruitless that

19

it is a waste of time even to try.  Cellco Partnership v. Town of Grafton, Mass, 336 F.Supp. 2nd 71, 82 (D. Mass. 2004).  The court in Cellco determined that the starting point of an effective prohibition analysis is always to determine whether there is a substantial gap in service that could be addressed by the proposed facility.  In the case at bar, T-Mobile presented testimony that the percentage of dropped calls was slightly more than double T-Mobile's acceptable level of 1% in the area surrounding the 14 Mile Road and Hayes Road intersection.  As stated in Section II D3a of this Report, the ZBA decision at least implicitly accepts the reality of the service gap.  Certainly, the Defendant has offered no scientific or technical evidence to the contrary.  Plaintiff submitted the sworn affidavit of the radio frequency engineer, Srinivas Kovuru, that a 120 foot tower at the proposed site was necessary to T-Mobile's provision of wireless communications services in the City of Fraser area.  (Affdt, ROA 0154).  Plaintiff submitted propagation maps developed by Kovuru, by inputting the location, by latitude and longitude, of existing telecommunications facilities in Fraser and neighboring communities into a licensed, industry standard software program designed to evaluate the level of wireless services.  The process revealed a significant area gap in cellular telephone communications service from within buildings in the Fourteen Mile Road and Hayes Road area.  (ROA 031-032; 060-061; 0218-0222).  Mr. Kovuru similarly generated propagation maps illustrating the effect that the installation of T-Mobile transmission facilities on existing cell sites would have on the level of service.  (ROA 062-063).  Those maps reflected that, while the coverage would be improved, a substantial gap would still remain.   Finally, Mr. Kovuru generated maps reflecting the coverage performance which could be expected from the installation of a 120 foot transmission tower on the property for which the variance was sought.  Those maps reflect that the proposed

20

project, while not totally eliminating the coverage gap, would result in significant improvement in cell phone service in those areas of Fraser, Warren and Sterling Heights surrounding the site.  In addition to the propagation maps, Kovuru and Ellen Tencer, T-Mobile's representative in connection with the variance application, explained the effect that the proposed variance could be expected to produce.  Based upon my review of the record, I conclude that T-Mobile has established the existence of a significant wireless communications coverage gap in the area of the Fourteen Mile Road and Hayes Road intersection.  As stated earlier, I further find that Defendant has conceded that fact in its written reasons for the denial of Plaintiff's petition.

In addition to establishing the existence of a significant gap in the availability of wireless communications services, Plaintiff must show that "from language or circumstances not just that [its] application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try."  Cellco, 336 F.Supp. 2nd at 82 (quoting Town of Amherst, NH v. Omnipoint Communications Enterprises, Inc., 173 F.3d 9, 14 (1st Cir. 1999).

> The First Circuit has identified two circumstances in which an individual decision may have the "effect" of prohibiting personal wireless services: (1) when a local authority "sets or administers criteria which are impossible for any applicant to meet;" and (2) when the "plaintiff's existing application is the only feasible plan."  In either case, "the burden for the carrier . . . is a heavy one."

Cellco, 336 F.Supp. 2nd at 83.

If Fraser's zoning ordinance had explicitly precluded the erection of wireless communications towers within the City, or if its Zoning Board of Appeals had uniformly denied every request for such construction, the issue would be easily decided.  Such an

21

outright ban would clearly contravene the provisions of the Telecommunications Act.  But such is not the case here.

Viewing the facts in the light most favorable to the ZBA, the Fraser Zoning Ordinance permits the construction of communications transmission towers in districts zoned IR ("industrial restricted").  Thus, the ordinance does not constitute an absolute prohibition against wireless communications facilities.  Even in IR districts, however, a height restriction of 35 feet is imposed, and a height variance would be required for the construction of a 120 foot tower.  That height restriction, if strictly applied, might reasonably be viewed as a prohibition against the construction of facilities of the size necessary to a wireless communications network.  The evidence in this record, however, reveals that cell phone towers have been built in Fraser, indicating that the Board has not administered the ordinance as an absolute prohibition.  (ROA 0077-78).  Under the analysis applied in Cellco, Plaintiff must , therefore, establish that its proposed facility is the only feasible means of providing effective wireless communications services to the affected area.

> 'For a telecommunications provider to argue that a permit denial is impermissible because there are not alternative sites, it must develop a record demonstrating that it has made a *full effort* to evaluate other available alternatives and that the alternatives are not feasible to serve its customers.'  The feasibility of alternatives is a fact intensive determination, and the plaintiff bears a heavy burden to make the appropriate showing.

Cellco, 336 F.Supp. 2nd at 83.

The court in Cellco determined that the plaintiff there failed to eliminate the possibility of other solutions which might adequately serve its needs in a manner consistent with the applicable zoning restrictions.  On its facts, however, the Cellco case is readily

distinguishable from the case at bar.  In <u>Cellco</u>, the court noted that there was no evidence that the carrier even attempted to evaluate alternative sites.  In our case, T-Mobile did consider alternatives, including building a tower in Sterling Heights and co-location of its facilities on existing towers in Fraser, Warren and Sterling Heights.  (ROA 213-32, 239-40).  Ms. Tencer and Mr. Kovuru answered the Board's questions with respect to the utility of varying tower heights, as well as reconfiguring coverage areas.  (ROA 243-45).  Board member's questions with respect to other potential locations for the proposed tower were also addressed.

The court in <u>Cellco</u> noted that the defendant Board had made concrete alternative suggestions for locating the proposed cell tower.  In the case at bar, the only real alternative suggested by the ZBA was construction of the proposed tower outside of Fraser.  While the Board in <u>Cellco</u> attempted to work with the carrier to achieve a mutually satisfactory solution, there is no evidence in this record that Fraser took such a course.  On the contrary, the tenor of the questions and comments regarding Plaintiff's variance application suggest an attitude that the City was being excessively and unfairly burdened in comparison with its neighbors to the West of Hayes Road.  That attitude is clearly reflected in reasons numbered 4, 5 and 6 in the Board's written decision.

In <u>Cellco</u>, the court noted that the Zoning Board had obtained and evaluated its own expert evidence on the proposed communications facility.  In the case at bar, the Board ignored the suggestion of its own planning consultant in failing to secure expert opinion regarding the T-Mobile project.  As a result, Defendant relies solely upon its perceived shortcomings in Plaintiff's presentation, together with lay opinion and largely irrelevant studies having no relationship to the case at bar, as justification for its denial.  Such

23

determinations are not sustainable as based on substantial evidence.  Verizon Wireless v. Douglas County, 544 F.Supp. 2nd 1218, 1247 (D. Kan. 2008) (determinations of technical issues cannot be sustained as substantial evidence where they are based on adjudicator's own independent findings and opinions rather than evidence and testimony in the record.) While it is neither surprising nor illegitimate for the Board to consider the needs and sensibilities of the residents of Fraser in reaching its decisions, it may not do so in a manner which has the effect of prohibiting the provision of services necessary to the formation of an effective and efficient national wireless communications network.[1]  In my view, the decision of the Fraser Board of Zoning Appeals does just that.  The Fraser zoning districts surrounding the proposed tower site are all residential.  The parties do not dispute that such districts are inappropriate for tower location.  T-Mobile's effort to construct a tower in Sterling Heights was unsuccessful because of the residential zoning classification of the proposed location.   The Fraser site, while still close to residential areas, was in a commercial zone.   There is no evidence that an alternative location, in Fraser or its neighboring communities was better suited to the project.  Such circumstances support the conclusion that the site at issue here is the only feasible alternative.  The Board has not cited substantial evidence to the contrary.

For all of the above reasons, I recommend that Defendant's Decision to Deny Plaintiff's Application for a Zoning Variance be reversed, and that Defendant be ordered

---

[1]  Even the ZBA justification based on secondary use, while sustainable under state and local law, must give way if it has the effect of a prohibition of wireless communications services.  Swansea, supra.

24

to provide any and all permits necessary for the construction of the proposed wireless facility.

III.    **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: September 15, 2009

25

**CERTIFICATE OF SERVICE**

I hereby certify on September 15, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 15, 2009: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217

26