UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

T-MOBILE CENTRAL LLC,

       Plaintiff,

                                              Civil No. 08-11878
                                              Hon. John Feikens

       v.

CITY OF FRASER,

       Defendant.
_____

**ORDER ADOPTING REPORT AND RECOMMENDATION**

    This case arises from a denial by the City of Fraser of T-Mobile's application for a zoning variance. T-Mobile seeks to fill a gap in its cellular telephone coverage through the installation a 120 foot monopole on property zoned for commercial use in Fraser. Fraser's zoning regulations limit the height of structures to 25 feet. When Fraser rejected T-Mobile's application for a zoning variance, T-Mobile appealed to this Court, arguing that Fraser's decision is contrary to federal law, because it has "the effect of prohibiting the provision of personal wireless services." The parties briefed their respective positions, and stipulated to the proceedings being conducted as an administrative appeal. (Dkt. Nos. 8, 10, 12, 15.)

     On September 15, 2009, Magistrate Judge Scheer issued a Report and Recommendation (the "Report") in which he recommended that Fraser's denial of T-Mobile's application for a zoning variance be reversed. (Dkt. No. 16). Fraser filed Objections to the Report. (Dkt. No. 18). T-Mobile filed a Response to Fraser's Objections, and later filed a Supplemental Response, citing newly-issued authority responsive to one of Fraser's objections. (Dkt Nos. 20, 21). For the reasons set forth below, I ADOPT Magistrate Judge Scheer's Report and Recommendation,

REVERSE the City of Fraser's denial of T-Mobile's application for a zoning variance, and ORDER Fraser to provide any and all permits necessary for the construction of the proposed wireless facility.

## FACTUAL BACKGROUND

Plaintiff T-Mobile Central, LLC ("T-Mobile") provides personal wireless communication (cellular telephone) services. Defendant City of Fraser ("Fraser") is a home-rule city, approximately four square miles in size, with approximately 15,297 residents. On November 27, 2007, T-Mobile filed an application with the Fraser Zoning Board seeking to construct a 120 foot tower at 32950 Hayes Road, Fraser. T-Mobile contends that the tower is necessary to fill a gap in its wireless telephone coverage in and around the intersection of Hayes and Fourteen Mile Roads.

Fraser's Zoning Board of Appeals held two public hearings. Among other witnesses, T-Mobile offered the expert testimony of Srinvas Kovuru, a radio frequency engineer engaged in the development of Plaintiff's wireless network. Mr. Kovuru evaluated the proposed project and determined that the requested tower was necessary to fill a substantial gap in coverage in the area. In response, Fraser offered no expert testimony. Indeed, although Fraser's planning consultant, Patrick Meagher, issued a written recommendation that T-Mobile's application be referred to an independent radio engineer for review, Fraser ignored that advice. In fact, the Zoning Board affirmatively declined to postpone voting on T-Mobile's application to allow time to obtain its own expert opinion. Instead, it offered only non-expert opinions of the Zoning Board members, and anecdotal statements of area residents, many of which were not T-Mobile customers.

T-Mobile advanced the following facts in support of its position that a significant gap in

coverage exists at the area in question:

- T-Mobile has established a service level goal of no greater than 1% of dropped calls (ROA 235);
- Each day, 8,158 calls are made by T-Mobile customers in the relevant area. Of those, an average of 165 calls are dropped (just over 2%) (ROA 147);
- 101 emergency 9-1-1 calls were placed by wireless customers in Fraser during a 3-month period (ROA 147);
- 14 Mile Road and Hayes Road are heavily traveled "major arteries", having approximately 60,000 vehicles commuting daily between residential and business communities in Warren, Sterling Heights, Fraser, and other neighboring cities. (ROA 66, 174-183);
- Signal propagation maps show insufficient signal strength to serve commercial properties, or residential properties with brick construction (ROA 160-165); and
- Existing cellular facilities have capacity limits, such that if more than 300 simultaneous calls are placed by T-Mobile customers, some callers will experience call drops (ROA 62, 66, 70, 83-84).

After the hearings, Fraser denied T-Mobile's application for a variance, citing nine separate bases for its denial. Notably, Fraser did not list T-Mobile's failure to establish a significant gap in coverage as a reason for its denial. Magistrate Judge Scheer observes that Fraser's written decision for its denial "appears to concede that such a coverage gap existed" (Report at 12) by listing the following reasons relevant to this Motion: (a) the service needs primarily exist in other communities, (b) the problem may be solved by co-locating T-Mobile's facilities within another cellular provider's facilities, and (c) maps indicate continued coverage lapses after the proposed installation.

Magistrate Judge Scheer found that "T-Mobile submitted documentary and testimonial evidence that a gap existed in wireless telecommunication services to areas of Fraser, Warren, and Sterling Heights surrounding the proposed tower site." Report at 11. Because Fraser "ignored the advice of its own expert", "fail[ed] to secure evidence to counter [T-Mobile's] evidence that there was a service gap," and "accepted the reality of the coverage gap in its

written decision," Magistrate Judge Scheer found that Fraser "may not now assert that T-Mobile failed to demonstrate that a gap existed." Report at 12.

## STANDARD OF REVIEW

The parts of the Report to which objections are made will be reviewed by the Court *de novo*. *See* FED. R. CIV. P. 72(b); *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001). The Court, however, "is not required to articulate all of the reasons it rejects a party's objections." *Id.* (citations omitted); *see also Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986).

## ANALYSIS

In his Report, Magistrate Judge Scheer recommends that this Court: (1) find that Fraser's denial of T-Mobile's application for a zoning variance has the effect of prohibiting the provision of wireless services, in contravention of federal law; (2) reverse Fraser's decision to deny T-Mobile's application for a zoning variance; and (3) order Fraser to provide any and all permits necessary for the construction of the proposed wireless facility.

Fraser objects that (1) the Report fails to articulate a legal standard used to determine the existence of a significant gap in coverage; (2) the Report incorrectly states that Fraser concedes that T-Mobile has established a significant gap in coverage; and (3) in finding a significant gap in coverage, the Report fails to address whether other service carriers provide coverage in the area.

I agree with Magistrate Judge Scheer's Report and Recommendation, and find that Fraser's objections fail for the reasons articulated below. Accordingly, I adopt Magistrate Judge Scheer's Report and Recommendation in its entirety.

Omnipoint Holdings v. The City of Cranston

After the Report was issued, the First Circuit issued an opinion in *Omnipoint Holdings, Inc. v. City of Cranston*, ___ F.3d ___, 2009 WL 3592399 (1st Cir. Nov 3, 2009), which has similar facts to the instant matter. Because the analysis is instructive, I have summarized the *Cranston* decision here.

In *Cranston*, a wireless carrier was denied a zoning variance to construct a wireless cellular tower in Cranston, Rhode Island. *Id.* at *1. Omnipoint had established reliability goals for calls made on its network, and determined the minimum cellular signal strength necessary to achieve its goals. *Id*. at *2. The court noted that "Federal law does not require any specific signal level; Omnipoint has set high standards to satisfy its customers." *Id*. Omnipoint performed propagation studies and detected signal levels below its established standards on Phenix Avenue, a main roadway connecting Cranston to nearby towns. *Id*. Omnipoint's radio frequency engineer verified these findings with a drive test, and designed a search ring to identify locations on which a new facility could be constructed to fill the coverage gap. *Id*.

After failed attempts to locate an existing facility for co-location, Omnipoint selected property for construction of a new tower within Cranston. *Id*. at *2-3. It then applied for a zoning variance to permit a 90 foot tower to be constructed on the site. *Id*. Having conducted several hearings, Cranston's zoning board, and zoning board of review, denied Omnipoint's application. *Id*. at *3. Omnipoint sued to overturn the denial, claiming that Cranston's denial "effectively prohibited the provision of personal wireless services." *Id*.

Omnipoint provided testimony from a radio frequency engineer explaining its signal strength goals, the gap in coverage, the search for available sites, and that the proposed site was the "best alternative" for the construction of the tower. *Id*. at *3-4. Cranston presented

testimony from a purported expert, who argued that (1) there was no gap in coverage, and (2) if there were, the carrier had alternative solutions available. *Id.* at *4.

Cranston first argued that there was no significant gap in coverage because the signal goals that Omnipoint had established were unnecessarily strong. Notably, however, Cranston's witness that challenged the gap's existence "had never visited the [proposed] area . . ., had performed no tests there, and had made no computer studies to support his opinions." *Id*. And, while Cranston claimed that reliable coverage could be achieved with less-strong signals, it "relied only on tests [it] had performed on [the carrier's] networks in other areas . . . [and] never proposed an alternative figure for reliable coverage." *Id.*

Next, Cranston said there were several alternatives to building a 90-foot tower on the designated property, including placing antennae on other utility poles or another carrier's tower, or building a multi-site network of smaller facilities. *Id.* Cranston, however, gave only vague details on the feasibility of these proposals, and did not reconcile the proposals with the carrier's technology. Nor did the Board investigate whether the theoretical "alternate sites" were available, "could even support the infrastructure [it] was envisioning", or would cover the identified gap in coverage. *Id.*

The district court found there to be a significant coverage gap, and found that the only feasible site available to the carrier was the proposed site. *Id.* at *5. On appeal, the First Circuit, applying the same fact-driven inquiry applicable to this case, affirmed: (1) a "significant gap" existed in coverage; and (2) alternatives to the carrier's proposed solution demonstrate that there is an effective prohibition. *Id.* at *8-9. The Court cautioned, these cases are decided "not on bright-line legal standards, but on the facts in the record." *Id.* at *8.

On appeal, Cranston urged the court to adopt the Third Circuit's analysis regarding the

existence of a significant gap, which considers whether <u>any carrier</u> provides service to a given area. Under that theory, if any carrier has coverage, there is no significant gap. The First Circuit noted that other courts have rejected that approach, choosing instead to evaluate whether a significant gap in coverage exists within the <u>individual carrier's network</u>. In declining to adopt the "any carrier" analysis, the First Circuit explained, "[i]n our view, [that] rule prevents customers in an area from having a choice of reliable carriers and thus undermines the [Telecommunication Act]'s goal to improve wireless service for customers through industry competition." *Id.* at *8.

The First Circuit listed a number of factors that courts should consider when evaluating whether a coverage gap is "significant," including, *inter alia*, the physical size of the gap, the area in which there is a gap, the number of users the gap affects, whether all of the carrier's users in that area are similarly affected by the gap, and data about percentages of unsuccessful calls or inadequate service during calls in the gap area. *Id.* at *9 (citations omitted). The lower court had found that the carrier established that a significant gap in coverage because signal levels were lower than established goals, and the road was "a heavily traveled and important route that connects Cranston to its neighbors." *Id.*

On appeal, Cranston argued that the lower court improperly had given consideration to the carrier's defined level of service on the question of the existence of a significant gap. *Id.* The First Circuit rejected the application of any "bright-line rule," and explained that the district court's finding was "quite reasonable." The court found that the district court had properly considered Omnipoint's expert testimony establishing that signal levels below the established goals constitute a gap in coverage, adding "the record contains no evidence that undercuts the premise, and the premise was reasonable on its face." *Id*. Moreover the First Circuit explained

that, as the fact-finder, the district court properly rejected the "completely unreliable and unpersuasive" conclusions of Cranston's purported expert, who lacked expertise in wireless systems, and whose opinions were "not based on any actual measurements or tests . . . conducted at the site." *Id.*

Objection #1:  Legal Standard for Determining Significant Gap in Coverage

In this case, Fraser first objects "to a finding that there is a significant gap in cellular coverage without addressing the legal standard relied upon in determining a significant gap."  In support of this objection, Fraser offers several cases from courts within the Third Circuit.  As discussed above, however, the Third Circuit is an outlier, whose analysis regarding significant gaps in coverage is not shared by other courts.  The "significant gap" inquiry is not subject to a bright-line rule, but is decided on the facts of the case.  *Cranston*, 2009 WL 3592399 at *8.

As in *Cranston*, T-Mobile presented testimony from a reliable expert skilled in the design of a wireless network.  The expert testified, and numerous propagation maps demonstrated, that signal levels in the subject area fail to meet T-Mobile's service-level standards, and are insufficient to serve commercial or brick-residential properties.  T-Mobile also provided testimony that thousands of calls (including 9-1-1 calls) are placed each day within the relevant area, hundreds of which are dropped.  And, like the area at issue in *Cranston*, Fourteen Mile and Hayes Road are "heavily traveled and important route[s]."  Although the signal levels appear to be sufficient for vehicle traffic, T-Mobile advanced unrebutted testimony that a high call volume (greater than 300 simultaneous calls) also results in dropped calls in the area.  Finally, as in *Cranston*, Fraser provided no reliable testimony to rebut T-Mobile's showing that a significant gap in coverage exists (having elected not to refer the matter for independent review).

In its Response Brief on Appeal (but not in its objections), Fraser also argued that T-

Mobile failed to present evidence of the number of customers affected by the gap. Fraser contends that the propagation maps "show only a small area <u>in the City</u>" (emphasis added) lacking coverage. It then analogizes the affected area to other cases that found no significant gap in a small residential cul-de-sac, a rural area, or the interior of buildings in sparsely populated areas. Response at 6-7. The gap, however, is not limited to the southeast quadrant of Hayes and Fourteen Mile Road. It is a significant area on all corners of that intersection, continuing in each direction, and impacting residential and business customers in Fraser, Warren, and Sterling Heights. The affected area cannot be defined as a sparsely populated or rural area – it is a commercial zone in the center of three highly-populated residential suburbs. Fraser's attempts to deem the gap *de minimus* are unpersuasive.

Magistrate Judge Scheer was not required to articulate a bright-line legal standard to conclude that a significant gap existed in coverage. I agree with Magistrate Judge Scheer's conclusion that T-Mobile has proven, and Fraser has utterly failed to rebut, a significant gap in coverage. Accordingly, Fraser's first objection is overruled.

Objection #2: Fraser's Concession of the Existence of the Gap

Second, Fraser argues that Magistrate Judge Scheer improperly concluded that Fraser conceded the existence of a significant gap in coverage. Reviewing the Report in its totality, however, I am satisfied that Magistrate Judge Scheer based his conclusion on his independent finding that a significant gap in coverage exists, rather than on Fraser's purported concession. Moreover, I have independently concluded that T-Mobile has demonstrated the existence of a significant gap in coverage. Therefore, Fraser's second objection is overruled.

Objection #3: Other Service Carriers Provide Coverage

Finally, Fraser objects to Magistrate Judge Scheer's finding that there is a significant gap in coverage without addressing whether other service carriers have provided coverage in that area. Again, Fraser relies exclusively on Third Circuit precedent in support of this objection. Although the Sixth Circuit has not spoken on this issue, as noted above, the Third Circuit's analysis has been highly criticized.

Removing any doubt as to the proper analysis, on November 18, 2009, the Federal Communications Commission ("FCC") issued a Declaratory Ruling in WT Docket No. 08-165, *In re Petition for Declaratory Ruling* ("FCC Ruling") which is determinative on this issue. In that ruling, the FCC concluded that "a State or local government that denies an application for personal wireless service facilities siting solely because 'one or more carriers serve a given geographic market' has engaged in unlawful regulation that 'prohibits or has the effect of prohibiting the provision of personal wireless services,' within the meaning of Section 332(c)(7)(B)(i)(II) [of the Communications Act of 1934]." FCC Ruling at ¶ 56. Any other reading would be contrary to the language and intent of the statute. *Id*. at ¶¶ 58-61.

Accordingly, the Court is not required to consider whether other carriers provide service in the area of the gap, and Fraser's third objection is overruled.

**CONCLUSION**

For the reasons set forth above, I OVERRULE Fraser's objections, ADOPT Magistrate Judge Scheer's Report and Recommendation in its entirety, REVERSE the City of Fraser's denial of T-Mobile's application for a zoning variance, and ORDER Fraser to provide any and all permits necessary for the construction of the proposed wireless facility.

**IT IS SO ORDERED.**

Date: December 10, 2009                             s/ John Feikens
                                                    John Feikens
                                                    United States District Judge

---

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on December 10, 2009, by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager

---